1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  KEVIN HOLMES, | )   Case No.: 1:12-cv-01759 – JLT (PC) |
| 12             Plaintiff, | )<br>)   ORDER GRANTING DEFENDANT'S MOTION |
| 13       v. | )   TO DISMISS PLAINTIFF'S FIRST AMENDED<br>)   COMPLAINT FOR FAILURE TO EXHAUST HIS |
| 14  S. JARAMILLO, et al. | )   ADMINISTRATIVE REMEDIES<br>) |
| 15             Defendants. | )   (Doc. 38)<br>) |
| 16 | ) |

17         Plaintiff Kevin Holmes ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis*

18  with a civil rights action pursuant to 42 U.S.C. § 1983.  The parties have consented to proceed under

19  the jurisdiction of the Magistrate Judge. (Docs. 7 and 33).  On May 15, 2013, Defendant filed a motion

20  to dismiss pursuant to Fed. R. Civ. P. 12(b). (Doc. 38).   Accordingly, and for the reasons set forth

21  below, the Court **GRANTS** Defendant's motion to dismiss.

22         **I.       Factual and Procedural Background**

23         Plaintiff, an African American inmate, proceeds on an Eighth Amendment claim of failure to

24  protect against Defendant. (Doc. 11 at 4).  Plaintiff avers that a riot occurred at North Kern State

25  Prison on February 11, 2012, between African American and Hispanic inmates. Id.  Consequently,

26  African American inmates were permitted to shower only with other African American inmates given

27  the racial tensions. Id.

28         Nonetheless, on February 15, 2013, Plaintiff claims Defendant knowingly opened the cell

1

1    doors of two Hispanic inmates while Plaintiff was showering. <u>Id</u>.  The two Hispanic inmates rushed

2    into the shower cell and attacked Plaintiff. <u>Id</u>.  A riot ensued in which prison officials shot Plaintiff

3    with a "block gun" and pepper-spray. <u>Id</u>.  Plaintiff suffered abrasions and a broken thumb. <u>Id</u>.

4    **II.    Failure to Exhaust Administrative Remedies**

5        **A.  Judicial Notice**

6        As a preliminary matter, Defendant requests the Court take "judicial notice of the

7    attached official record, consisting of a Declaration from M. Rocha, Appeals Coordinator at North

8    Kern State Prison, and attached exhibit consisting of the Inmate/Parolee Appeals Tracking system at

9    North Kern State Prison."[1] (Doc. 38-3).

10       Fed. R. Evid. 201 permits a court to take judicial notice of any facts which may be "accurately

11   and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

12   201(b) and (d).  However, a Court may only take judicial notice of facts contained in a state agency's

13   records where the facts are not subject to a reasonable dispute." <u>Brown v. Valoff</u>, 422 F.3d 926, 931 n.

14   7 (9th Cir. 2005).  Similarly, the Court "should only take judicial notice of facts contained in agency

15   records that bear sufficient indicia of reliability."  <u>Armstrong v. Scribner</u>, CIV. 06CV852L(RBB),

16   2008 WL 268974 (S.D. Cal. Jan. 30, 2008) (<i>quoting</i> <u>United States v. Perez-Corona</u>, 295 F.3d 996,

17   1001 n. 4 (9th Cir. 2002).

18       Though the record produced by M. Rocha appears to have been kept in the ordinary course of

19   business and thus have some indicia of reliability, (<i>See</i> <u>Armstrong v. Scribner</u>, CIV.

20   06CV852L(RBB), 2008 WL 268974 (S.D. Cal. Jan. 30, 2008)), the Court has not been provided with

21   the substantive documents upon which record is based.  Moreover, Plaintiff has provided the appeal

22   which he claims demonstrates exhaustion.  Thus, the value of the summary record provided by Rocha

23   is unclear.

24       Nevertheless, the Court will take judicial notice of the fact that Plaintiff filed a Form 602 dated

25   April 4, 2012, with the log number NKSP-B-12-00378, which is the only 602 form provided to the

26   Court. (Doc. 11 at 12-13; Doc. 41).  The parties do not dispute the existence of this document. <u>Id</u>;

27

28   [1] The Court declines to take judicial notice of the declaration as there is no basis to do so.  However, the Court may consider the declaration as evidence submitted in support of the motion.

(Doc. 38-1).  The Court takes further judicial notice that in the first level of his appeal, Plaintiff requested to be "cleared of all charges just as [his] cellmate…was found not guilty of all charges." (Doc. 11 at 12).  Finally, the Court notes that in the second level of his appeal, Plaintiff stated that "Defendant intentionally opened the Hispanic inmates' cell, who then attacked Plaintiff and broke his thumb. Id. at 13.

### B.  § 1997(e)(a) of the Prison Litigation Reform Act

Defendant argues that Plaintiff failed to exhaust his administrative remedies regarding the claim that Plaintiff set forth in his amended complaint. (Doc. 38-1 at 3).  Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are thus required to exhaust all available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007).  Exhaustion of administrative remedies is mandatory regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).

In order to properly exhaust administrative remedies, an inmate must comply with the prison's deadlines and other critical procedural rules.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In California, the Department of Corrections and Rehabilitation has established an administrative grievance system for prisoner complaints.  See Cal. Code Regs, tit. 15 § 3084.1 (West 2009).  Prisoners may appeal any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare.  Id. at § 3084.1(a).  The process is initiated by a prisoner submitting a CDCR Form 602, which is also known as an "inmate appeal."  Id. at § 3084.2(a).  The inmate appeal typically proceeds through four levels of review: an informal level, the first formal level, the second formal level, and the third formal level, also known as the "Director's Level."  Id. at § 3084.5.  A final decision from the Director's Level of review typically satisfies the exhaustion requirement under § 1997e(a).  See, e.g., Barry v. Ratelle, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997).

The exhaustion requirement is not jurisdictional, but rather creates an affirmative defense that a

1    defendant may raise in a non-enumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d 1108, 1117-

2    19 (9th Cir. 2003).  The defendant bears the burden of raising and proving the absence of exhaustion.

3    Id. at 1119.  In deciding the motion, "the court may look beyond the pleadings and decide disputed

4    issues of fact."  Id.  If the court concludes that the prisoner has not exhausted all of his available

5    administrative remedies, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.

6    If a complaint contains exhausted and unexhausted claims, "the court proceeds with the good and

7    leaves the bad."  Jones, 549 U.S. at 221.

8        The grievance procedures set forth by the CDCR provide the process by which an inmate may

9    complain about the conditions of his confinement.  Porter, 534 U.S. at 532.  Notably, these procedures

10   are accompanied by deadlines by which the inmate must take action.  For example, the inmate must

11   submit his grievance within 30 days of the event at issue.  15 Cal. Code. Regs. § 3084.8(b).

12       Here, Plaintiff provides a 602 of he filed related to the unfavorable rules violation

13   determination he received.  (Doc. 41 at 4)  In this appeal, Plaintiff claims that he should not have been

14   found guilty of the rules violation because he "was the first person attacked in this riot."  Id.  Plaintiff

15   explains that the Black inmates were in the shower cells already when Jaramillo opened the cell door

16   for two Northern Hispanics who entered the shower cell and with whom Plaintiff engaged in a fight.

17   Id.  In terms of the relief sought, Plaintiff requested he "be cleared of all charges . . ."  Id.

18       This appeal was granted in part. (Doc. 41 at 3)  Nevertheless, Plaintiff then submitted a Third

19   Level appeal and asserted that, "I am dissatisfied so I'm making [sic] a section 832.5 citizen's

20   complaint on c/o Jaramillo id# 51021, c/o D.B. Arroyo for c/o Jaramillo [sic] gross negligence because

21   on 2/15/2012 c/o Jaramillo intenlitionally [sic] opened cell 254 in 2 Hispanic Prisoners (Sanchez AK

22   1353 and Wilmer AK 78841) who immediately ran out of the cell and attacked me in c/o D.B. Arroyo

23   told me that's what I get in the Hispanic are going to get me back in I got a broken left  [  ] in c/o

24   Jaramillo gross negligence." (Doc. 41 at 4) The Court takes this to mean that Plaintiff complained that

25   Jaramillo opened the cell door and allowed the cell Hispanic inmates access to the area where Plaintiff

26   was showering and which allowed the ensuing fight.

27       Notably, this complaint was submitted to the Third Level on May 17, 2012, this was three

28   months after the incident. (Doc. 41 at 3, 4)  This appeal was cancelled because Plaintiff's appeal had

4

been resolved at the second level.  Id. at 3.  Moreover, the appeals officer noted that in attempting to now make a complaint against the officers, "You are attempting to circumvent the appeals process by adding new issues when submitting for third level review.  These issues will not be addressed."  Id.

Nothing in the record indicates that Plaintiff filed a timely grievance from the February 15, 2012 event related to misconduct by Defendant.  Moreover, the express limitation on the relief sought by Plaintiff—requesting that he be found not guilty of the rules violation—caused such ambiguity in the grievance that the Court finds it did not sufficiently apprise the CDCR of the problem for which he now seeks damages. McCollum v. California Dept. of Corrections and Rehabilitation, 647 F.3d 870, 876 (9th Cir.2011).  ["We determine whether an inmate's claim has been exhausted by reference to the prison's own grievance requirements, Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.2009), which necessitate that the inmate 'describe the problem and action requested,' Cal.Code Regs. § 3084.2(a)."] In fact, a reasonable interpretation, in light of the relief sought, is that Jaramillo's conduct was mentioned only as support for the contention that Plaintiff was already in the shower cell when the two Hispanic inmates entered.

On the other hand, even if there was no ambiguity, the grievance cannot be construed as exhausting the issues unrelated to the disciplinary hearing because it was not timely submitted.  These issues were known to Plaintiff at the time of the event and, therefore, he was required to raise them no later than 30 days after the event, given the requirements of the regulations at the time.  Cal.Code Regs. § 3084.8(b).  However, this grievance was not was submitted until about 90 days after the incident.  The Ninth Circuit has confirmed, "[t]o survive a motion to dismiss, the inmates' claims must be both exhausted and timely." McCollum, 647 F.3d at 876.  Thus, because the grievance was not timely submitted as to conduct unrelated to the disciplinary proceeding, the Court finds Plaintiff has not exhausted his administrative remedies as to the issues raised in his complaint.

In so finding, the Court rejects the notion that an inmate who has suffered a disciplinary proceeding is given "two bites at the apple" to exhaust non-disciplinary but incident-related, issues. An inmate is not permitted to submit a grievance that omits claims and then later, revive the very claims he should have raised initially in an appeal from an adverse disciplinary decision.  Woodford v. Ngo, 548 U.S. at 83-84 ("Proper exhaustion demands compliance with an agency's deadlines and

5

other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.")  Any other determination would be nonsensical.[2]  Because the Court finds Plaintiff failed to comply with the prison's exhaustion procedures (Woodford v. Ngo, 548 U.S. at 93), this matter must be **DISMISSED** without prejudice.

**ORDER**

Accordingly, and for the foregoing reasons, the Court **ORDERS** that:

1.  Defendant's Fed. R. Civ. P. 12(b) Motion to Dismiss is **GRANTED;**

2.  The amended complaint (Doc. 11) is **DISMISSED without prejudice;** and

3.  The Clerk of the Court is **DIRECTED** to **CLOSE** this matter.

IT IS SO ORDERED.

Dated:   **July 3, 2013**                          **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE

---

[2] Taken to its logical conclusion, failing to grant the motion to dismiss here would mean that an inmate who suffers an attack due to an officer's inaction but who complies with prison rules during the attack would have one opportunity to grieve the situation while an inmate who is found to violate prison rules during the attack, would have two; this cannot be.